**NATIONAL IMPORTING & TRADING CO., Inc., v. CLARK.**

(Circuit Court of Appeals, Second Circuit. November 10, 1920.)

No. 41.

Sales ⚖=1(3)—Contract indefinite as to price not enforceable.

A contract for the sale of ten carloads of sardines, to be shipped during the packing season, at a "price to be fixed by the government," *held* not enforceable, where no price was fixed by the government; the only action taken being a declaration by the Food Administrator that any price above a maximum stated would be deemed unreasonable.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Andrew Clark, doing business as L. D. Clark & Son, against the National Importing & Trading Company, Incorporated. Judgment for plaintiff, and defendant brings error. Reversed.

Simpson, Thacher & Bartlett, of New York City (Thomas D. Thacher, and Adrian L. Foley, both of New York City, of counsel), for plaintiff in error.

John L. Clark, of New York City (Frederic H. Cowden, of New York City, of counsel), for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MANTON, Circuit Judge.    Plaintiff below was engaged in the business of canning sardines, with a factory at Eastport, Me., and entered into a contract on the 11th of April, 1918, with the defendant below, a New York manufacturer, engaged in the import and export business.  The contract provided for the sale of ten carloads of canned goods, one-fourth oil, Keyless sardines, in cotton seed oil. The contract provided:

"Price to be fixed by the government, f. o. b. Eastport, Maine.  Shipment to go forward during the packing season, 1918, quantity to be named by the owners, not exceeding two cars for any one shipping month.  Shipments on this contract will be made subject to packing."

Under the heading of "Remarks" it is provided:

"It is understood and agreed that whatever price the government deems proper to fix shall be acceptable to the buyer."

This contract was accepted by both litigants.  The terms of the contract were, therefore, measured by the packing season of 1918; it was, however, subsequently extended to March 1, 1919.  Subsequently the Food Administrator declared that a price above $6.50 would be considered unreasonable.  Thereafter, and on May 28th, a conference was held of the sardine packers, where a maximum price of $6.50 was agreed upon by the packers.  On the 28th day of May, the United States Food Administrator declared, after this conference with the sardine packers, that any price higher than $6.50 would be considered unreasonable.  This price was recommended by 90 per cent. of the sardine packers.  Under the contract, a carload was shipped to the plaintiff below about June 7, 1918, was invoiced and paid for at $6 a case.  On July 8th, the plaintiff below wrote the defendant below, asking for shipping instructions for five carloads at a price of $6 at Eastport for the 1918 packed sardines.  It was there stated:

"This is the price of reliable packers for new packed goods, and we do not have any 1917 packed goods to offer at all."

On July 18, 1918, a second carload was shipped and paid for at $6 a case, and on September 30, 1918, the plaintiff below wrote to the defendant below that it was holding eight carloads for the defendant below "as per contract for ten cars, two of which you have already taken," and, further, "the price is $6.50 Eastport for Keyless one-fourth oils."  It will be noted that in this correspondence no reference is made to the government price as fixed, for the fact is that the government never fixed a price and no official action was taken for fixing a price, other than above referred to as the act of the Food Administrator.

On October 2d, the defendant below replied to the plaintiff's letter of September 30th.  No price is mentioned therein, but it is stated that the defendant below is overstocked, and contended that, under the contract, it had the privilege of ordering cars up to and including February, 1919.  The canning season under the Maine law extended from April 15th to December 1st.  On October 5th, the plaintiff below again wrote, making no mention of price, but contending that the packing season ended December 1st, and that the defendant below must

take the remaining eight cars in October and November. On October 11th, in a letter by the defendant below to the plaintiff below requesting the shipment of two cars in October, it was stated:

"It seems to us that you should or could invoice the same somewhat below $6.50. Sardines are being offered in the local market at prices ranging from $6 to $6.25."

On October 14th the plaintiff below wrote the defendant below:

"Your contract with us called for ten carloads of sardines at the government price. * * * We inclose you clipping from the New York Journal of Commerce which states the government price of sardines. * * * For your information, will say the packers have applied to the government to increase the price of sardines to $7 Eastport basis. * * * Our price is $6.50 Eastport, and we have been shipping at this price right along."

Subsequently, about October 31 and November 16, 1918, two cars were delivered to the defendant below. They were invoiced at $6.50 a case, and after some correspondence were paid for at the rate of $6 a case. Although the time of delivery for the remaining six cars was extended to March 1, 1919, no other cars were delivered by the plaintiff below to the defendant below or accepted. On February 26, 1919, the defendant below informed the plaintiff below that the contract was void. On January 10, 1919, the government terminated its control over canned sardines.

It thus appears that the plaintiff below and defendant below agreed upon the purchase and sale of the sardines, but at a price to be fixed by the government at a future time. No price was fixed by the government. At best, the Food Administrator by an order approved the price fixed by the sardine packers, who fixed a maximum price of $6.50. Before the maximum price was withdrawn, four carloads had been delivered. The first two were paid for at the price of $6 per case, and although the last two were invoiced at $6.50 per case, they were paid for by the acceptance by the seller of $6. The court may not enforce the terms of a contract, where the minds of the parties have not met. Nor can the court read into the contract a fixed price, when no price has been fixed by a third party, whom it has been agreed upon should fix the price. Lobenstein v. U. S., 91 U. S., 324, 23 L. Ed. 410. The rights and obligations of the parties to the contract must be found within the terms of the contract, and, when legal responsibility is sought to be imposed, the measure of liability must be that contained in the contract. At best, the government here agreed upon the maximum price which was fixed by the sardine packers, and then issued an order, which was a warning to men engaged in this line of business, that a price above $6.50 per case would be considered unreasonable. With the most liberal construction given to the phrase of the contract, "It is understood and agreed that whatever price the government deems proper to fix shall be acceptable to the buyer," the seller could not impose upon the buyer the approved maximum price. The terms of the contract indicate a future act, a contemplated act, upon the part of the government, for it uses the phrase "to be fixed." The Food Administrator's intention was to enforce the provisions of the Lever Act of August 10, 1917.[1] The phrase above quoted must

[1] Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e-3115⅛kk, 3115⅛l-3115⅛r.

be reconciled, if possible, with the price as stated in the contract, "to be fixed by the government."

When on January 10, 1919, the government terminated its control over food, the plaintiff below was no longer obligated to the maximum price, even if he were theretofore, for the restrictions placed upon the parties by reason of the maximum price approved by the Food Administrator did not prevail. Thereafter the market price prevailed. It is reasonable to suppose that the parties contemplated the contingency that the government might terminate its control over price fixing, but the court cannot read into the contract "maximum price," where the word "price" is used by the parties. The buyer had six weeks longer in which to buy when the government terminated its control. The original contract contemplated delivery of not more than two cars a month during the season, but since there was an extension to the 1st of March to take the remaining cars, which extension omitted the amount of deliveries per month, the buyer still had this time in which to call for deliveries.

We think the court should have directed a verdict for the defendant. Judgment reversed.